IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| VALERIE OLIVER, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| MGB, INC., d/b/a | * | Civil Action No. 3:18-cv-96-HEH |
| PURE PLEASURE, and | * | |
| WILLIAM PYLARIS, | * | |
| Defendants. | * | |

**MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT**

Arm's length negotiations have concluded with the parties' agreement to resolve this matter by agreement. A true and accurate copy of the proposed Settlement Agreement is being filed under seal contemporaneously herewith. For the following reasons, the settlement is fair and equitable, and properly takes into account the risks and uncertainties the parties would face should the case not settle at this juncture.

**I**     **Nature of the Action And Summary Of Underlying Facts**

Oliver previously performed as an entertainer/dancer at the Gentlemen's Club known as "Pure Pleasure." This action is brought under the Fair Labor Standards Act, 29 U.S.C. Sec. 201, et seq. Oliver seeks to recover for alleged violations of the minimum wage and overtime provisions of the FLSA, and associated liquidated damages. She also seeks recoupment of monies she claims she was required to pay

1

to or on behalf of the Defendants in order to perform at Pure Pleasure. Defendants deny all liability under the FLSA, and have asserted counterclaims against Oliver for unjust enrichment, quantum meruit and set offset, and breach of contract [ECF 27-1, pp.18-21].

At all pertinent times, Oliver was classified as an "independent contractor" rather than an employees, and as such, she was paid no wages directly by the Defendants. Her compensation was instead paid directly to her by customers of the Club, the vast majority of which Defendants contend were actually "service charges" which lawfully belonged to them.

The FLSA provides for a generally applicable two year limitations period, increased to three years in the event of "willful" violations. Defendants deny the existence of any FLSA violation, and further deny that any alleged violation was "willful." The parties disagree, therefore, as to the applicable limitations period. Assuming a two year limitations period, Oliver would be permitted to recover for FLSA violations which occurred during period February 8, 2016 until approximately December 1, 2017, when she ceased performing at Pure Pleasure. Assuming a finding of willfulness, the applicable limitations period would be February 8, 2015 until December 1, 2017.

Oliver estimates that she worked as an entertainer an average of 48 weeks per year, five shifts per week, ten hours per shift. She possesses no documents, however,

to substantiate the number of shifts and hours she actually worked. Defendants, for their part, claim that Oliver worked as a "tipped employee" (waitress) for much of the applicable limitations period, more specifically, that she began dancing in 2017, and that she worked far fewer shifts and hours than she claims. Were Oliver to succeed in establishing liability, and these estimates proven, she would be entitled to recover minimum wage/overtime damages totaling $35,083 (the two year period between 2/8/16 and 2/8/18 ), or $54,220 (three year period between 2/8/15 and 2/8/18). She might also be entitled to recoup some the amounts she claims, and defendants deny, she was required to pay in order to perform at Pure Pleasure.[1]

Oliver also sought liquidated damages in the complaint. Defendants contend that she is not entitled to liquidated damages under the FLSA. This is so, they claim, because they at all times acted in good faith in reliance on the Department of Labor's guidance and established rulings, administrative regulations, and interpretations of the FLSA, including, but not limited to, the findings and conclusions issued by the

---

[1] Oliver estimates that she paid approximately $100 per shift to perform as an entertainer at Pure Pleasure. If she established liability, and proved that she worked the number of shifts/hours she claims (which Defendants dispute), she might stand to recover $48,000 for the two year period beginning 2/8/16 and ending 2/8/18, or $72,000 for the three year period beginning on 2/8/15 and ending on 2/8/18.

3

Department of Labor in its investigation in 2014 of Defendant Pylairas's Baby Dolls facility located in Hopewell, Virginia. [ECF 27-1, p.8].[2]

## II    Procedural Posture

This action was filed on February 8, 2018. Pursuant to the Court's standard procedures [ECF 25-1], a settlement conference was thereafter scheduled for August 2, 2018. [See 6/19/18 docket entry scheduling settlement conference.] In preparation for that conference, Defendants provided to Plaintiffs information regarding plaintiff's employment history, including dates of claimed employment, assignments, employee status, and hours/shifts worked, as well as information pertaining to Oliver's claimed criminal history. The parties thereafter arrived at an agreed-upon settlement days prior to the scheduled settlement conference.

## III    Terms of the Settlement

The settlement reached by the parties calls for a mutual release, and payment to Oliver in the amount of $75,000, inclusive of attorney's fees and expenses of litigation. The settlement does not specify any particular amount relative to attorney's fees.[3]

---

[2] Under similar circumstances, the Fourth Circuit has held that the seeking and receipt of legal advice regarding the lawfulness of the independent contractor defeated a claim for liquidated damages. See McFeeley v. Jackson Street Entm't, 825 F.3d 235, 245 (4th Cir. 2016).

[3] This is also not a "prevailing party" case in which the Plaintiff has previously secured a judgment against the Defendant and is requesting the Court to supplement the judgment with an additional "lodestar" award of attorney's fees. Absent a judgment in plaintiff's favor, §216(b)'s fee shifting provision does not apply. The fee agreement between Oliver and her

**IV**     <u>**Law Applicable To The Settlement of FLSA Actions**</u>

Courts have held that the FLSA requires court approval of the terms under which the parties may dismiss an FLSA claim with prejudice. <u>Hendrix v. Mobile Link Virginia, LLC</u>, 2017 WL 2438067 *1 (E.D. Va. 2017), <u>citing</u>, <u>Lynn's Food Stores, Inc. v United States</u>, 679 F.2d 1350, 1353 (11th Cir. 1982); <u>Baker v. Dolgencorp, Inc.</u>, 818 F.Supp.2d 940, 941 (E.D. Va. 2011)("It is well established that the settlement of an employee's FLSA action must be approved by a federal court."). Initially, the district court must assess whether "there are FLSA issues that are actually in dispute". <u>Hendrix</u>, <u>supra</u> at *1, <u>citing</u> <u>Saman v. LBDP, Inc.</u>, 2013 WL 3880427 at *3 (D.Md. 2013).

Next, the district court must determine whether the settlement is a reasonable compromise over the issues. <u>Hendrix</u>, <u>id</u>, <u>citing</u>, <u>Lynn's</u>, <u>supra</u>, 679 F.2d at 1352. In carrying out this task, district courts usually consider the following:

1) the extent of discovery that has taken place;

---

attorneys provides for a 35% fee. Thus, the client will receive $48,000 and the attorneys will receive $27,000, out of which all expenses incurred in the litigation will be paid. See <u>Venegas v. Mitchell</u>, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 764 (1990)("there is nothing [in §1988] to regulate what plaintiffs may or may not promise to pay their attorneys...§1988 controls what the losing defendant must pay, not what the prevailing plaintiff may be bound to pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the reasonable attorney's fee that a defendant must pay pursuant to a court order."); <u>Evans v. Jeff D.</u>, 475 U.S. 717, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986) ("the Court of Appeals' decision rested on an erroneous view of the District Court's power to approve settlements in class actions.....the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.").

5

2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation;

3) the absence of fraud or collusion in the settlement;

4) the experience of counsel who have represented the plaintiffs;

5) the opinions of [ ] counsel ...; and

6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recover

Hendrix, id., citing Saman, supra at *3. Where attorney's fees are negotiated as an element of the settlement, the Court should consider the reasonableness of any requested fee. Hendrix, 2017 WL 2438067 *1. Here, the parties do not seek a judicially imposed award of fees.

Considering these factors, the parties and their counsel are of the strong view that the Court should approve the proposed settlement. Carr v. Rest Inn, Inc., 2015 WL 5177600 *5 (E.D. Va. 2015) ("given the strength of Ms. Carr's claim, the defenses advocated by the Defendants, the uncertainty of damages…and the general uncertainty and expense that accompanies all litigation, the Court finds that the proposed…settlement is fair and reasonable.")

**V**     **The Proposed Settlement Is Fair And Reasonable, Reflects A Realistic Assessment Of the Risks Of Litigation And Associated Delay, And Should Be Approved**

Where a settlement agreement requires judicial approval, the Court's deliberations are "informed by the strong judicial policy favoring settlement, as well

6

as the by the realization that compromise is the essence of settlement." Bennett v. Behring Corp, 737 F.2d 982, 986 (11th Cir. 1984). Similarly, the terms of the parties' negotiated settlement are entitled to careful consideration:

> Consent decrees are entered into....after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation.

Carson v. Am. Brands, 450 U.S. 79, 101 S. Ct. 993, 67 L. Ed. 2d 59(1981), quoting United States v. Armour & Co., 402 U.S. 673, 681 (1971).

The settlement in this case was arrived at prior to conducting formal discovery. The parties did, however, informally exchange information pertinent to key issues in the case such as the Oliver's employment status, and numbers of shifts/hours worked. As to the first factor, the extent of discovery, as in Carr, supra, this exchange of information "provide[d] some support for [Oliver's] claims." 2015 WL 5177600 *2. Second, also as in Carr, supra, "while the settlement has been reached before discovery closes and before expert reports are prepared and exchanged, both parties would necessarily incur significant additional expense were this case to continue in litigation as the parties readied for trial." Id. Third, also as

in Carr, "there is neither evidence of, nor even a suggestion of, any collusion on the part of the parties." Id.

As concerns the fourth, fifth and sixth factors to be considered, as reflected in the accompanying Declaration of lead Counsel Harlan S. Miller [Exhibit "1" hereto], he possesses considerable experience in litigating matters arising under the FLSA, including numerous cases involving exotic dancers.. He also possesses considerable trial court and appellate experience in litigating FLSA and other employment matters. In his considered professional opinion, given the contested number of issues presented in this case, including, both liability *vel non*, the applicable statute of limitations (two or three years, the issue of good faith/liquidated damages, and the amount damages (minimum wage and overtime based on the number of shifts and hours worked), the settlement amount agreed to, $75,000 for a single plaintiff case, constitutes a very reasonable outcome. This is especially true given the risk that Plaintiff faces due to the possibility of an award against her, or a very diminished recovery she might secure---based on the counterclaims and affirmative defenses asserted by the Defendants and the certainty of incurring substantial expenses and the time value of money, that is the virtual certainty of considerable delay that is inherent in all litigation.

## VI     Conclusion

Based on the foregoing discussion, the parties jointly request that the Court enter an Order approving the proposed settlement. A proposed Order is submitted herewith.

Respectfully submitted this 6th day of September, 2018.

| | |
|---|---|
| */s/ Harlan S. Miller* | */s/ Thomas M. Lucas* |
| Harlan S. Miller | Thomas M. Lucas |
| Georgia Bar No. 506709 | VSB 43655 |
| Miller Legal, P.C. | Jackson Lewis, P.C. |
| 6767 Leslie Lane | 500 E. Main Street, Suite 800 |
| Macon, Ga. 31220 | Norfolk, Virginia, 23510 |
| (404) 931-6490 | (757) 648-1145 |
| hmiller@millerlegalpc.com | thomas.lucas@jacksonlewis.com |
| | |
| | Counsel for Defendants |
| _____ | |
| Stephen B. Pershing | |
| VSB 31012 | |
| Pershing Law PLLC | |
| 1416 E Street, N.E. | |
| Washington, D.C. 20002 | |
| (202) 642-1431 | |
| steve@pershinglaw.us | |

Counsel for plaintiff

9

## Certificate of Service

I hereby certify that on September 6, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which then send a notification of such filing (NEF) to opposing counsel as follows:

Thomas M. Lucas
Kristina H. Vacquera
Milena Radovic
Jackson Lewis, P.C.
500 E. Main Street, Suite
Norfolk, Virginia, 23510
(757) 648-1145
thomas.lucas@jacksonlewis.com

_____
Stephen B. Pershing